# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

CHARLES HARRISON, and
KATHRYN HARRISON, both individually and as co-
administrators on behalf of the estate of
JOSHUA HARRISON,

Plaintiffs,

-vs-                                                                        DECISION AND ORDER

THE CITY OF CORNING, and
JOHN DOE CORNING POLICE OFFICERS, and                15-CV-6716-CJS
WILLIAM E. YESSMAN, JR., in his capacity as
THE SCHUYLER COUNTY SHERIFF, and/ or
JOHN DOE DEPUTY SCHUYLER COUNTY
SHERIFFS, and/ or SCHUYLER COUNTY

Defendants

---

## INTRODUCTION

**Siragusa, J.**  Plaintiffs Charles Harrison ("Charles") and Kathryn Harrison ("Kathryn")

filed a complaint pursuant to 42 U.S.C. §1983, alleging violations of Amendments IV and XIV

of the United States Constitution.  Compl., Nov. 11, 2015, ECF No. 1.  In particular, Plaintiffs

maintain that Defendants violated their rights and the rights of their deceased adult son, Joshua

Harrison ("Joshua"), in connection with a police chase that resulted in Joshua's death.  Now

before the Court are Defendants' motions to dismiss pursuant to Federal Rule of Procedure

("Fed. R. Civ. P.") 12 (b)(6), and Plaintiffs' cross-motion to amend their complaint pursuant to

Fed. R. Civ. P. 15.  For reasons detailed below, Plaintiffs' cross-motion to amend is denied, and

Defendants' motions to dismiss are granted.

## FACTUAL BACKGROUND

The Court takes the following facts from the Complaint, ECF No. 1, filed on November 25, 2015, and the proposed Amended Complaint, ECF No. 13, filed on March 8, 2016, and assumes those facts to be true for the purposes of this motion analysis.[1]  In this regard the Court considers Plaintiffs' Notice of Claim pursuant to New York General Municipal Law 50-e, and the transcripts of Charles Harrison's testimony from a hearing conducted pursuant to General Municipal Law § 50-h, which Plaintiffs submitted in support of their cross-motion to amend, as being incorporated into the proposed Amended Complaint.

On the evening of February 5, 2015, at approximately 10:30 P.M., in the City of Corning, Joshua Harrison, an adult male, was involved in a motor vehicle accident that caused damage to another vehicle, and then fled from the scene.[2]  At the time, Joshua was driving a car belonging to his parents, the Plaintiffs.[3]  Later that evening, officers employed by the defendant Corning Police Department spotted Joshua driving the same car, recognized the car as having been involved in the earlier accident, and attempted to pull the car over.[4]  Joshua refused to pull over and kept driving.[5]  The Officers pursued Joshua out of the City of Corning and into the County

---

[1] It is of course well-settled that in resolving a 12(b)(6) motion, the Court is limited as to what it can consider.  *See, Vasquez v. City of New York,* No. 10 Civ. 6277(LBS), 2012 WL 4377774 at *1 (S.D.N.Y. Sep. 24, 2012).  (On a 12(b)(6) motion, "a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Chambers v. Time Warner, Inc..* 282 F.3d 147, 153 (2d Cir. 2002) (*quoting Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993)).").

[2] Amended Complaint ¶ 13; Am. Compl. Ex. D., pursuant to Section 50-h of the N.Y. General Municipal Law ("50-h Transcript") at 37.

[3] 50-h Transcript 37.

[4] Am. Compl. ¶ 14.

[5] 50-h Transcript 43.  Plaintiffs allege in conclusory fashion that the police engaged in a "high speed chase" but offer no factual allegations as to how fast the cars were going.

of Schuyler, at which point, members of the Schuyler County Sheriff's Department joined in the pursuit of Joshua over unlit, slippery back roads that were covered in snow.[6]

At approximately midnight, while the chase was still in progress, two Corning Police Officers went to Plaintiffs' home after having determined from DMV records that Plaintiffs owned the car involved in the chase and the earlier hit-and-run.[7]  At that point, Police did not know the identity of the driver.[8]  When the officers asked Plaintiffs about whom may be driving the car, Charles reported that the car was his but had been purchased for his son, Joshua, to use.[9] From this, the officers determined that Joshua was probably the person operating Plaintiffs' car.[10]  Charles also told the officers that Joshua worked at Southern Tier Auto Recycling,[11] which was located on Coon Hollow Road.[12]  While speaking to the officers, Charles overheard an officer's radio report stating that the chase suspect had lost control of the car and run into the woods on Coon Hollow Road, and that officers were pursuing him on foot.[13]  As the officers left the Harrison's home, one of them told Charles: "If we get him you won't hear from us, if we don't get him we'll be in touch."[14]

Meanwhile, officers at the scene continued to look for Joshua, whom they last saw running from his workplace, Southern Tier Auto Recycling, into the forest.[15]  To assist with the

---

[6] Am. Compl. ¶ 15.
[7] 50-h Transcript 38.
[8] 50-h Transcript 43.
[9] 50-h Transcript 43, 77.
[10] 50-h Transcript 43
[11] The Court takes Judicial Notice that Southern Tier Auto Recycling is located at 1225 Coon Hollow Road in the Town of Beaver Dams, New York.
[12] 50-h Transcript 46–47.
[13] 50-h Transcript 46.
[14] 50-h Transcript 43–44.
[15] 50-h Transcript 54, 60.

search, Schuyler County Sheriff's Deputies brought in a canine unit.[16]  The officers tracked Joshua for approximately two hours, but eventually, determined that it was too cold to continue searching, since the temperature, with wind chill, was approximately twenty degrees below zero. Specifically, officers stopped searching for Joshua between 2 A.M. and 2:30 A.M..[17]  Officers waited by Joshua's abandoned car for a time to see if he would return, but when he did not return, they had the car towed away.[18]

Later that day, at 9:45 A.M., Charles went to the Corning Police Station to inquire about Joshua's whereabouts.[19]  Charles spoke to Officer Sanford ("Sanford"), who stated that he had been in charge of the search for Joshua the previous night.[20]  During the conversation, Sanford told Charles that the officers still had not apprehended Joshua.[21]  Sanford discussed the officers' attempts to locate Joshua, indicated where Joshua was last spotted, and pointed out where the car had been found.[22]  Sanford repeated several times that it had been too cold for the officers to continue their pursuit.[23]

Charles told Sanford he would go look for Joshua himself; he did not request any assistance from Police.[24]  Between 11 A.M. and 12 P.M. that day, Charles and two other men began searching for Joshua, using his footsteps in the snow from the prior night to track him.[25] Approximately one to one-and-a-half hours later the searchers found Joshua's body, located

---

[16] 50-h Transcript 58.
[17] 50- h Transcript 63–64.
[18] Am. Compl. ¶¶ 17, 18.
[19] 50-h Transcript 93.
[20] 50-h Transcript 93.
[21] 50-h Transcript 56–57.
[22] 50-h Transcript 60, 63, 64, 94, 104, 105
[23] 50-h Transcript 61.
[24] 50-h Transcript 72–73.
[25] 50-h Transcript 92, 93, 100.

about one-hundred feet from a home and approximately a mile away from where he had abandoned the car.[26]  It is undisputed that Joshua froze to death due to exposure to the elements.[27]  At the time that Joshua had run into the woods he was dressed in a hooded sweatshirt, three t-shirts, jeans, and a pair of work boots.[28]

## PROCEDURAL HISTORY

On April 30, 2015, Plaintiffs served a Notice of Claim on Defendants, pursuant to New York's General Municipal Law.  That same day, Plaintiffs petitioned to be appointed as co-administrators of Joshua's estate in New York State Surrogate's Court, Steuben County. Surrogate's Court issued Limited Letters of Administration to Plaintiffs, granting them authority to pursue a wrongful death cause of action on behalf of Joshua's estate.

On November 25, 2015, Plaintiffs commenced this action.  Plaintiffs, both individually and as co-administrators of Joshua's estate, list four causes of action in the Complaint: (1) a state law negligence claim;  (2) a state law wrongful death claim; (3) a claim pursuant to 42 U.S.C. § 1983, alleging that the Defendant "John Doe" Police Officers and Sheriffs Deputies violated Joshua's rights under the Fourth Amendment, and Fourteenth Amendment Substantive Due Process Clause[29]; and (4)  a claim pursuant to 42 U.S.C. §1983, alleging *Monell*[30] liability against William E. Yessman, Jr., in his capacity as the Schuyler County Sheriff, Schuyler County, and the City of Corning.

---

[26] 50-h Transcript 59, 60, 65, 93, 103.
[27] 50-h Transcript 96–97.
[28] 50-h Transcript 97.
[29] The pleading also makes a passing reference to a Procedural Due Process violation, but offers no explanation for such a claim.
[30] *Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658 (1978).*

On January 22, 2016, the City of Corning Defendants ("City Defendants") filed a motion to dismiss ECF 10 pursuant to Fed. R. Civ. P. § 12(b)(6), asserting that: (1) Plaintiffs individually are not proper parties to the action and lack standing to pursue either § 1983 claims for constitutional violations committed against Joshua or state-law tort claims; (2) the Complaint fails to state a plausible Fourth Amendment claim; (3) the Complaint fails to state a plausible Due Process claim; (4) the Complaint fails to state a plausible *Monell* claim; (5) the Complaint fails to comply with New York General Municipal Law §50-i requiring the complaint to allege that at least thirty days have elapsed since serving the notice of claim; (6) the State law tort claims are barred as a matter of law because any injuries were sustained while Joshua was engaged in criminal activity; and (7) the State-law claims are barred by the doctrine of governmental immunity.

On January 25, 2016, the Schuyler County Defendants ("County Defendants") also filed a motion to dismiss ECF 11 pursuant to Fed. R. Civ. P. § 12(b)(6).  County Defendants argue that: (1) Plaintiffs in their individual capacities lack standing to pursue claims under § 1983 or State law; (2) the Complaint fails to state any viable constitutional claims; (3) the Complaint fails to state a claim for negligence; (4) the Complaint fails to allege a wrongful acts by any individual County Defendant; (5) the purported § 1983 claim fails to state a claim against any defendant in his official capacity, and fails to allege the personal involvement of any defendant in his individual capacity; and (6) the § 1983 claims against the individual defendants as barred by the doctrine of qualified immunity.

On March 8, 2016, Plaintiffs filed an opposition to Defendants' motions to dismiss, and a cross-motion for leave to amend the Complaint pursuant to Fed. Civ. P. 15 (a)(2), ECF 13.

On April 7, 2016, both City Defendants and County Defendants filed reply briefs in support of their motions, and in opposition to Plaintiffs' Cross-Motion to Amend, in which they argue that the proposed amendment would be futile.   On May 24, 2016, the Court heard oral arguments on the motions.

## STANDARDS OF LAW

### *Motion to Dismiss*

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).  Although all factual allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Ashcroft v. Iqbal,* 556 U.S. at 678.  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### *Motion to Amend*

Federal Rule of Civil Procedure 15 provides, in relevant part that "a party may amend its pleading . . . with …the court's leave," and that "[t]he court should freely give leave when justice so requires."  Fed R. Civ. P. 15 (a)(2).  However, amendments may be denied where, *inter alia*, they would be futile. *See, e.g.*, *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993) ("[W]here it appears that granting leave to amend is unlikely to be productive . . .  it is not an abuse of discretion to deny leave to amend.").  A proposed amendment is futile if it "would be subject to 'immediate dismissal' for failure to state claim or on some other ground."

*Singh v. N.Y.S. Dept. of Tax & Fin.,* 2011 WL 3273465, at *35 (W.D.N.Y. 2011) (citing *Jones v. New York Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir. 1999)).

## Section 1983 Standard

Section 1983 "is not itself a source of a substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred.'" *Long v. Crowley*¸ No. 09–CV–00456A(F), 2012 WL 1202181 (W.D.N.Y. Mar. 22, 2012) (citations and internal quotation marks omitted).  To establish individual liability under Section 1983, a plaintiff must show that the defendant acted under color of state law and caused the plaintiff to be deprived of a constitutional right. 42 U.S.C. § 1983.  A prerequisite to such a claim is "the personal involvement of the defendant in the alleged constitutional deprivation."  See *Kretzmon v. Erie County*, No. 11-CV-0704, 2013 WL 636545 at *14  (W.D.N.Y. Feb. 20, 2013) (citing *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010)).  Accordingly, to state a claim under Section 1983 against a supervisory official a plaintiff must sufficiently plead that the supervisor was personally involved in the constitutional deprivation.  *Rivera v. Fischer*, 655 F.Supp.2d 235, 237 (W.D.N.Y. 2009) (citing *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001)).  Personal involvement by a supervisor may be satisfied by alleging facts showing:

> (1) the defendant participated in the participated in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicated that constitutional acts were occurring.

*Rivera v. Fischer*, 655 F.Supp.2d at 237–38 (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995; other citation omitted).

In *Monell v. Department of Social Services*, the Supreme Court held that a municipality can only be held liable if the constitutional deprivation is the result of a governmental policy or custom. 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978) ("*Monell*").  However, "[a] municipality cannot be liable for inadequate training or supervision when the officers involved…did not violate the plaintiff's constitutional rights."  *Curley v. Village of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001).

<u>Fourth Amendment Standard</u>

A wrongful Fourth Amendment seizure of a suspect by police "requires an intentional acquisition of physical control."  *Brower v. City of Inyo,* 489 U.S. 593, 596, 109 S.Ct. 1378 (1989) ("*Brower*").  A governmental "order to stop must be obeyed or enforced physically enforced by the government against an individual to constitute a seizure."  *U.S. v. Cuthbert*, 466 Fed.Appx. 46, 46–47, 2012 WL 880622 at *1 (2d Cir.  Mar. 16, 2012).  In *Brower* the Supreme Court explained that a "Fourth Amendment seizure [occurs] . . . only when there is a governmental termination of freedom of movement *through means intentionally applied*.  489 U.S. at 596–97.  An unsuccessful attempt to apprehend an individual is insufficient to constitute a seizure under the Fourth Amendment.  *See*, *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998).  An individual fleeing from the police is not "seized" merely because the police are pursuing him; the police must actually catch him, or he must surrender, before there is a seizure. *See*, *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 1550-1551 (1991) (Suspect being chased by police officer was not seized for Fourth-Amendment purposes: "An arrest

9

requires either physical force . . . or, where that is absent, submission to the assertion of

authority." ); *see also*, *Brendlin v. California*, 551 U.S. 249, 262, 127 S.Ct. 2400, 2409 (2002)

("[A] fleeing man is not seized until he is physically overpowered.").

*Fourteenth Amendment Standard*

"Any claim predicated on a violation of due process must involve the invasion and

deprivation of a recognized, life, liberty, or property interest." *Ware v. City of Buffalo*, 186

F.Supp.2d 324, 332 (W.D.N.Y. 2001) (citation omitted). A substantive due process claim

involves a governmental abuse of power that "shocks the conscience." *Cnty. of Sacramento v.*

*Lewis*, 523 U.S. at 846, 118 S.Ct. at 1717. Mere negligence is insufficient to establish a

substantive due process violation. *See, D.S. v. City of Peekskill*, 581 F. App'x 65, 66 (2d Cir. Oct.

22, 2014) ("[T]o survive a motion to dismiss [a due process claim, the plaintiff] must plausibly

allege that defendants violated his constitutional rights intentionally—not just negligently.").

In the context of a police chase where the fleeing suspect is injured by police conduct,

"[o]nly a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the

element of arbitrary conduct shocking the conscience, necessary for a due process violation."

*Cnty. of Sacramento v. Lewis*, 523 U.S. at 836, 118 S.Ct. at 1711 (finding no purpose to cause

harm after a police officer accidentally hit and killed a fleeing individual during a high-speed

chase). "[E]even a minor traffic stop, and pursuit of a fleeing suspect after an unexplained flight

from that stop, is a legitimate government interest[;]" however, a pursuing officer may violate

the substantive due process clause if he injures the suspect with "some intent to harm that goes

beyond the traffic stop." *Steen v. Myers*, 486 F.3d 1017, 1023-1024 (7th Cir. 2007).

**DISCUSSION**

Before discussing Defendants' motions, it is necessary to address Plaintiffs' cross-motion to amend, because if the Court were to grant that application, it would moot the Defendants' motions directed at the original Complaint.  In analyzing Plaintiffs' cross-motion to amend, the Court must examine the plausibility and sufficiency of the claims in the proposed Amended Complaint.

<u>*Fourth Amendment Claim*</u>

Here, the proposed Amended Complaint does not allege sufficient facts to plead a wrongful Fourth Amendment seizure.  Absent from the proposed pleading is any allegation that Joshua obeyed the Officers' orders to stop, or that the Officers ever physically captured him.  Rather, the proposed pleading alleges that Joshua successfully evaded capture.  Am. Compl. ¶¶ 16–18.  Accordingly, there was no seizure.

Plaintiffs attempt to rely on *Brower v. City of Inyo*, cited earlier, in which the Supreme Court held that the use of a police roadblock to stop a fleeing individual amounted to a seizure under the Fourth Amendment.  The Court stated that the use of a road block is "[i]n marked contrast to a police car pursuing with flashing lights," explaining that the use of a roadblock is not only a show of authority, but it is designed to create a physical impact if the fleeing suspect does not stop.  *Id.,* 489 U.S. at 598*.*  However, as indicated above, mere pursuit of a fleeing suspect does not constitute the intentional application of force required for a Fourth Amendment seizure violation.

Although Plaintiffs admit that the Officers never caught Joshua, they assert that the Officers' pursuit of Joshua over snow covered roads amounted to the intentional use of physical authority.  Am. Compl. ¶ 29.  However, "[t]he Fourth Amendment addresses 'misuse of power,' not the accidental effects of otherwise lawful government conduct." *Brower v. County of Inyo*, 489 U.S. at 596 (citation omitted).  Road and weather conditions are not within the authority or control of police and therefore, they do not constitute the intentional application of force.

Therefore, the proposed Amended Complaint fails to state a claim that either the City or County Defendants improperly seized Joshua in violation of his Fourth Amendment rights.[31] Consequently, Plaintiffs motion to amend must be denied as futile insofar as it seeks to plead a Fourth Amendment claim against individual officers or a *Monell* claim against the City or County.  Moreover, since the original Complaint contains even fewer plausible allegations than the proposed amended pleading, the Court will grant the City Defendant's and County Defendant's Motion to Dismiss the Fourth Amendment claims in the original Complaint for the same reasons stated above.

## *Fourteenth Amendment Claim*

The proposed Amended Complaint alleges that Defendants violated Joshua's Fourteenth Amendment procedural and substantive due process rights.  Am. Compl. ¶ 42.  In regard to the procedural due process claim, the proposed pleading does not offer any plausible facts to support such a claim.  Instead, the proposed pleading makes only a passing reference to procedural due process,  Am. Compl. at ¶ 42, which does not explain how a procedural substantive due process

---

[31] At oral argument the Plaintiffs' attorney attempted to argue that the towing away of Joshua's car amounted to a Fourth Amendment seizure.  Since that argument was not raised in the pleadings, the Court will not analyze that issue.

claim could be maintained in the instant case.  Therefore, the proposed amended pleading fails to assert an actionable procedural due process claim.  Am. Compl. ¶ 42.  As for the substantive due process claim, the proposed pleading alleges that Defendants violated Joshua's substantive due process rights, both by pursuing him, and then by terminating the pursuit .  Am. Compl. ¶ 28.  First, the proposed pleading alleges that the officers' pursuit of Joshua was "completely unwarranted, reckless, and/ or deliberately indifferent," and that the officers' continued pursuit of him into the woods, as well as towing his car, was "unconscionable."  Next, the proposed pleading alleges that the officers "negligently terminated any active search" for Joshua, and "failed to follow through on proper search and rescue attempts."  Am. Compl. ¶ ¶ 18, 28.

The proposed Amended Complaint does not allege sufficient facts to plead a substantive due process violation by any defendant.  To begin with, the proposed pleading fails to allege which Defendants are responsible for the alleged violations of Joshua's substantive due process rights.  More importantly, the proposed pleading fails to allege facts plausibly suggesting that during the officers' pursuit of Joshua, any officer acted with the purpose to cause harm unrelated to the legitimate object of arrest.  Rather, the facts alleged indicate that the officers' pursuit of Joshua was a legitimate response to the fact that he was driving a car which had earlier left the scene of an accident, and that he had refused the officers demands to pull over.  Additionally, the proposed Amended Complaint fails to allege that when officers terminated their foot pursuit of Joshua , they intended to cause him harm.

The proposed Amended Complaint also fails to allege "conscience-shocking" conduct by the Defendants, which is necessary to assert a substantive due process violation.  *Cnty. of Sacramento v. Lewis*, 523 U.S. at 836.  For example, in *Salamacha v. Lynch*, the Second Circuit

dismissed a substantive due process claim involving a high-speed police chase during which the suspect crashed and was injured. *Id.*, 165 F.3d 14 (table), 1998 WL 743905 (2d Cir. Sep. 25, 1998). The Court found that the police pursuit had been reasonable in scope and duration, and had been warranted because the plaintiff "dr[ove] aberrantly, committed several traffic violations and . . . failed to submit to [the officers'] show of authority." *Id.*, 1998 WL 743905 at *2. Here, similarly, the alleged action of the officers, in attempting to stop a car suspected of being involved in a hit-and-run accident, and then pursuing the car when the driver refused to pull over, does not approach the level of conduct that is "so 'brutal and offensive to human dignity' as to shock the conscience." *Smith v. Half Hollow Hill Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). This is particularly true here, where there is no allegation that the pursuit, in and of itself, was unsafe or resulted in injury to Joshua.[32]

Similarly, the officers' decision to terminate their foot chase of Joshua, without conducting a search-and-rescue operation, does not amounts to conscience-shocking behavior. The officers spent approximately two hours attempting to locate Joshua. The officers attempted to track Joshua through the snow using a canine officer. Meanwhile, Joshua, an adult in no apparent mental or physical distress, actively evaded the officers by hiding in wooded property adjacent to his place of employment and to residences. There was no indication of anything preventing Joshua from either surrendering to the officers, seeking shelter at his workplace or at a neighboring residence, or telephoning an acquaintance for a ride. Surely, the officers could not

---

[32] As noted earlier, the pleadings do not indicate the speed of the chase; instead, they merely suggest that the chase was unsafe because the roads were covered in snow. In any event, there is no indication that Joshua suffered any injury during either the car chase or the termination of that chase. Rather, Joshua's injury occurred later, as a result of exposure to the cold.

have suspected that Joshua would choose to risk freezing to death rather than face questioning concerning a minor traffic accident.  Upon these facts, the officers' decisions, to terminate their search and to tow Joshua's car, do not, as a matter of law, amount to conscience-shocking governmental conduct.

Consequently, Plaintiffs request to amend the Complaint is denied as futile insofar as it pertains to Fourteenth Amendment procedural- and substantive due process claims against individual officers or a *Monell* claim against the City or County.  Moreover, since, as with the Fourth Amendment claim, the original Complaint contains even fewer plausible allegations, the Court will grant both City Defendant's and County Defendant's Motions to Dismiss the Fourteenth Amendment claims in the original Complaint for the same reasons stated above.

*State-Law Claims*

The Court having determined that all of the federal claims over which it has original jurisdiction must be dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims, pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons stated above, Defendants' motions [#10][#11] to dismiss are granted as to all federal claims.  Plaintiffs' cross-motion to amend [#13] is denied.  The Court declines to exercise supplemental jurisdiction over any remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3), and those claims are dismissed without prejudice.  Plaintiffs are advised that the statute of limitations governing their state-law claims will be tolled for a period of thirty days, pursuant to 28 U.S .C. § 1367(d). *See, Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir .1998)

("Section 1367(d) ensures that the plaintiff whose supplemental state claim is dismissed has at least thirty days after dismissal to refile in state court.").   The action is otherwise dismissed with prejudice.  The Clerk of the Court is directed to close this action.

SO  ORDERED.

Dated: Rochester, New York
          October 7, 2016

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge